# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza, 16th Fl., Brooklyn, NY
11201 Tel: (718) 330-1200  Fax: (718) 855-0760

Tamara L. Giwa
*Executive Director and*
*Attorney-in-Chief*

Michelle A. Gelernt
*Attorney-in-Charge*

April 24, 2026

BY ECF and Email
The Honorable Ramon E. Reyes
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

*Re: United States v. Darren McKenzie*, 25-cr-304 (RER)
**PSR OBJECTIONS**

Your Honor:

Mr. McKenzie submits the following objections to the guidelines range and imposition of restitution outlined in the Pre-Sentence Report ("PSR"). The PSR calculates Mr. McKenzie's base offense level as 14 citing U.S.S.G. § 2A2.2, aggravated assault, based upon Mr. McKenzie's conviction under 18 U.S.C. § 111(a)(1). PSR ¶15. The PSR adds a five-level enhancement pursuant to § 2A2.2(b)(3)(B), alleging that the FBI agent "sustained serious bodily injury," and a two-level enhancement pursuant to § 2A2.2(b)(7) based upon Mr. McKenzie's conviction under 18 U.S.C. § 111(b). *Id.* at ¶¶16-7. The PSR calculates a total offense level of 18, subsequent to a three-level reduction for acceptance of responsibility, and a guidelines range of 33-41 months under Criminal History Category III. *Id.* at ¶¶23-25, 65. The government adopts the same guidelines estimate. *See* ECF 20.

Mr. McKenzie objects to Probation's guidelines estimate and proposes the following estimate:

- Base Offense Level: 10
  - § 2A2.4(a) (Obstructing or Impeding Officers)
- Specific Offense Characteristic: +2
  - § 2A2.4(b)(2) (bodily injury)
- Adjusted Offense Level: 12

1

- Acceptance of Responsibility: -3
    - § 3E1.1(a), (b)
- Total Offense Level: 9
- Criminal History Category III
- Guidelines Range: 8-14 months

As noted in the statutory index in U.S.S.G. Appendix A, a conviction pursuant to 18 U.S.C. § 111 falls under both §2A2.2 and §2A2.4.  *See* Appx. A. Although the PSR calculates the guidelines range using §2A2.2, there is no explanation given in the PSR as to the applicability of §2A2.2 compared to §2A2.4. PSR ¶15.

Here, §2A2.4 should apply as the conduct at issue, one punch, does not meet the definition of an "aggravated assault" under the Guidelines.  The Commentary at §2A2.2 defines an "aggravated assault" as "a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; or (D) an intent to commit another felony." §2A2.2, n. 1.  The Commentary further notes that the aggravated assault section "covers felonious assaults that *are more serious than other assaults because of the presence of an aggravating factor*, *i.e.*, serious bodily injury; the involvement of a dangerous weapon with intent to cause bodily injury; strangling, suffocating, or attempting to strangle or suffocate; or the intent to commit another felony."  §2A2.2, Background (emphasis added).

Here, none of the above factors are present in the instant case.  At the time of the incident, there was no dangerous weapon present, nor were there any allegations that Mr. McKenzie strangled or suffocated the agent, nor that he intended to commit another felony.  Next, the PSR guidelines estimate includes a five-level enhancement for serious bodily injury.  PSR ¶16.  However, the agent's injuries, principally a concussion and laceration to the nose, *see* PSR ¶6, do not meet the definition of "serious bodily injury."  The Commentary at §1B1.1 defines a "serious bodily injury" as one that "means injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation."  §1B1.1, n. 1(L).  By contrast, §1B1.1 describes a "bodily injury" as "any significant injury; *e.g.*, an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought."  §1B1.1, n. 1(B).

As described in the PSR, after the agent was struck, he was treated at the ER and discharged the same day, and was prescribed a pain reliever, a decongestant, and a tetanus shot.  PSR ¶7.  The agent's injuries did not require "surgery, hospitalization, or physical rehabilitation," nor did he suffer "impairment of a

2

function of a bodily member or organ." §1B1.1, n. 1(L) (cleaned up).  Although the agent described some lingering effects of the concussion, such as headaches and trouble sleeping, it does not appear that those effects rose to the level of "impairment of a mental faculty."  *Id.*; *see* PSR ¶11 (cleaned up).  Instead, the agent's injuries are consistent with a "significant injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought."  §1B1.1, n. 1(B) (cleaned up).

Further, Courts have denied the application of §2A2.2 in cases involving convictions under 18 U.S.C. § 111 where the injuries at issue were more severe than those described here.  In *United States v. Van Sach*, the defendant was convicted in violation of 18 U.S.C. § 111(a) and (b) for a single punch to a correction's officer, striking him in the eye and causing "severe swelling, sharp pain, and bruising around the officer's eye."  *United States v. Van Sach*, 104 F.4th 1003, 1004 (7th Cir. 2024).  There, the 7th Circuit reversed the sentence finding that the District Court committed plain error by applying § 2A2.2 for aggravated assault, rather than the more appropriate § 2A2.4 for "Obstructing or Impeding Officers," which resulted "in an additional 46 to 57 months in the recommended length of a sentence."  *Id.* at 1004-6.  The Court further noted that "the error was plain.  The court's application of § 2A2.2 resulted in a higher guidelines range, and an error affecting a defendant's guidelines range also affects his substantial rights."  *Id.* at 1006 *citing Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016); *United States v. Goodwin*, 717 F.3d 511, 521 (7th Cir. 2013).

Further, the 10th Circuit in *United States v. Egbert* reversed the District Court's finding that the complainant in an assault case suffered a serious bodily injury under § 2A2.2, where several individuals in a white supremacist group engaged in a racially-motivated assault, and witnesses testified that the complainant was thrown "to the ground and hit his head into the street," was "kicked and hit by multiple suspects," and was observed to be "unconscious and bleeding from his head."  *United States v. Egbert*, 562 F.3d 1092, 1101 (10th Cir. 2009).  The Court declined to adopt the "the contention that a brief loss of consciousness without more satisfies the definition of serious bodily injury."  *Id.* at 1102.  The Court further cited several cases from "this and other circuits upholding serious bodily injury enhancements involve substantially more evidence of serious injury requiring medical treatment than the evidence presented here" including *United States v. Woodlee*, 136 F.3d 1399, 1404, 1409 (10th Cir. 1998), where the Court in *Egbert* noted "medical records revealed victim, who required surgery, had suffered permanent scarring of the retina from being shot in the eye and had pellets lodged in head, face, and back" and *United States v. Dennison*, 937 F.2d 559, 562 (10th Cir. 1991) where the Court in *Egbert* noted the "testimony of treating physician and victim revealed victim suffered seven lacerations on face, neck, and

upper chest, requiring forty-eight sutures," and *United States v. Long Turkey*, 342 F.3d 856, 858–859 (8th Cir. 2003), where the Court noted "undisputed facts showed victim required overnight hospitalization for rectal laceration, abdominal pain, and bruised scalp following sexual assault" among others. *Egbert*, 562 F.3d at 1101-2.

As noted above, the agent's injuries, a concussion and laceration to the nose, did not require surgery, hospitalization nor produce any long-term impairment of a vital organ or bodily function. Further, the facts at issue are analogous to *Van Sach*, where the defendant initiated one punch against a correction's officer and the officer sustained an injury to his face. *See Van Sach*, 104 F.4th 1004. Notably, the agent's injuries did not rise to the level of those described in *Van Sach*, *Egbert*, *Woodlee*, *Dennison*, or *Long Turkey*, where courts denied the application of §2A2.2 and did not find that the complainants had sustained serious bodily injuries. Therefore, this Court should similarly find that the agent sustained bodily injuries, and not serious bodily injuries, and apply the proposed guidelines range described above using §2A2.4.

Mr. McKenzie further objects to the imposition of restitution. The PSR calculates a restitution amount of $3,331.98 based upon the affidavit of loss submitted by the agent, due to loss of pay and related medical costs. PSR ¶¶10, 73. The PSR further includes the related special conditions for Mr. McKenzie to comply with any restitution order from the Court and provide financial disclosures to Probation during any term of supervision. *Id.* at ¶¶101-2.

Here, the imposition of restitution would not be appropriate to achieve the goals of sentencing. As an initial matter, the Court must consider Mr. McKenzie's financial resources, among other factors, in determining whether to order restitution. *See* 18 U.S.C. § 3664(a). The PSR notes that Mr. McKenzie is unable to pay a fine, as he has no income, expenses, assets, liabilities, or credit history, largely due to his incarceration. PSR ¶¶60-3. Further, as noted in the PSR, Mr. McKenzie has only had one full-time position as a cook at a Wingstop location for a one-year period, and no other significant full-time employment, other than project-based employment in the construction industry. *Id.* at ¶¶58-9. Notably, prior to his arrest, his only employment consisted of one "off the books" shift for a construction company where he earned $160. *Id.* at ¶59. In *United States v. Fuentes*, the Court vacated the defendant's restitution given the defendant's inability to pay. *See United States v. Fuentes*, 107 F.3d 1515, 1527-34 (11th Cir. 1997). Here, Mr. McKenzie would also have no financial ability to pay restitution and a restitution order should not be imposed.

Further, as the agent noted in his statement to Probation, he anticipates that his expenses and lost compensation will be recovered through the federal workers' compensation program. PSR ¶11. Here, although the agent sustained an

4

unfortunate bodily injury and some related impacts on his work duties, he has further described that those impacts are temporary.  The agent is still employed by the FBI and returned to work 45 days after the incident, and was cleared to return to full-time work shortly thereafter.  *Id.*  Additionally, while the agent noted some delays in seeking a promotion and an instructor's certification, there does not appear to be any prohibition on his ability to secure either the promotion or certification based upon the incident or his injuries.  *Id.*  Here, given Mr. McKenzie's inability to pay restitution, and the limited nature of the loss articulated by the agent, a restitution order should not be imposed and the Court should further not impose the related special conditions of supervision.

Based upon the foregoing, the Court should deny the application of §2A2.2 and adopt the proposed guidelines range outlined above using §2A2.4, and not impose the restitution order and related special conditions of supervision, as such decisions would be sufficient, but not greater than necessary, to achieve the goals of sentencing.

Respectfully submitted,

/s Karume James
Karume James
Attorney for Darren McKenzie
Assistant Federal Defender
Federal Defenders of New York
(347) 638-3098
karume_james@fd.org

cc:    AUSA Matthew Sullivan (by ECF and email)
       Chambers of the Hon. Ramon E. Reyes (by email)